UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EARON LASHAWN TYLER,

                Petitioner,

vs.                                    Case No.  2:04-cv-340-FtM-29SPC

SECRETARY,    Department    of
Corrections; ATTORNEY GENERAL for
the State of Florida,[1]

                Respondents.

_____

## OPINION AND ORDER

### I.   Status

Petitioner, who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254. Petitioner (hereinafter "Petitioner" or "Tyler") challenges his state court judgment of conviction entered in the Twentieth Judicial Circuit Court in DeSoto County, Florida. Petition at 2. In compliance with this Court's Order,

---

[1]Respondent notes that Petitioner is not in the custody of the Florida Attorney General and therefore asks that the Court dismiss the Florida Attorney General and substitute the Secretary of the Department of Corrections as the sole Respondent. Response at 1, n.1. The Court agrees and will dismiss the Florida Attorney General. Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts (hereinafter the "Rules") provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent." The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 124 S. Ct. 2711, 2717 (2004). This is "'the person with the ability to produce the prisoner's body before the habeas court.'" Id.

Respondent filed a Response (Doc. #7, Response) and submitted numerous exhibits, including the post-conviction motions filed by Petitioner and the transcripts from Petitioner's state court proceedings.  See Docs. #8, #10 (not scanned on docket). Petitioner filed a Reply (Doc. #11-1, Reply) to the Response and attached exhibits.[2]  On December 8, 2006, the Court directed Respondent to file a Supplemental Response concerning the procedural history of two post-conviction motions that Petitioner filed subsequent to the date he filed his federal petition.  Order at Doc. #19.  Respondent filed the Supplemental Response (Doc. #22) and attached exhibits (Doc. #27) to explain the procedural history of Petitioner's last two post-conviction motions.

## II. Procedural History

Petitioner was prosecuted for first degree murder and robbery with a firearm.  Exh. 38 at 1-5; Response at 2.  The Indictment for first degree murder charged Petitioner with killing Enrique Hernandez while Petitioner was engaged in the perpetration or an attempt to perpetrate the crime of robbery.  Exh. 38 at 1-2.  The Information for robbery with a firearm charged Petitioner with

_____

[2]Petitioner's exhibits are as follows: Exh. A is an Order denying his 3.850 motion dated July 22, 2004, based on newly discovered evidence; Exh. B is Petitioner's affidavit stating that he will not appeal the court's denial of his 3.850 motion; Exh. C consists of 6 pages of deposition testimony elected during the hearing from Sam Williamson; Exh. D is four pages of testimony from the direct examination of Sam Williamson during the trial.  The same documents, but complete versions, were filed by the Respondent.

robbing Hernandez by taking U.S. currency.  Exh. 38 at 3; Response at 2.  In October 1997, Petitioner was tried for both charges.

A summary of the evidence adduced at trial is as follows:  The murder victim's wife testified that Tyler, the man found lying near the front door of the store, was the man who came into the store, robbed them and shot her husband to death.  Exh. 38 at 450, 459-460.  The murder victim's daughter also testified that the person who had crawled to the front of the store, Tyler, was the man who came into the store, robbed them and shot her father to death.  Id. at 495, 498.  The victim's cousin, Jorge Esparza, testified that he was allowed by the gunmen to leave the store, unharmed, before the victim was shot.  He further testified that Tyler, whom he identified in court, was the man lying on the floor when he returned to the store.  Id. at 258.  Another customer at the store, Elodio Mejia, testified that the shirt that was worn by Tyler at the time of the murder, was "just like" the one he saw the gunman wearing when he entered the store to rob it.  He described the gunman as wearing dark clothing and wearing something red tied around his face, covering the front of his face from his nose down. Id. at 238-239.  He further testified that one of the robbers entered the kitchen with him and two other people, Janet Hernandez and Jorge Esparza, while the other robber remained in the main part of the store.  When Mr. Mejia exited the kitchen, he then exited the store through the front door; when he returned shortly after the shooting because he heard Mrs. Hernandez' screams for help, he

-3-

saw "[a] man laying on the floor in front of the door." Id. at 239-240, 244-246.  At the physical location of the shooting, directly in front of the counter where the shots were fired, a trail of blood lead away from the counter toward the door where Tyler was found resting.  Id. at 223.  Petitioner was bleeding and the trail of blood directed to him.  Id. at 228.

During a search of the store, a mask and a red bandana was found under an ice machine a few feet from the location where Tyler was found bleeding from gunshot wounds.  Lieutenant Sam Williamson of the DeSoto County Sheriff's Office discovered the bandana while investigating the crime scene.  Id. at 233.  He was advised that the gunman had been wearing "something red" covering his face and searched the area where Tyler had been lying.  There were bloody red drag marks on the floor leading to the area near the ice machine.  A photograph of the bandana under the ice machine was admitted into evidence and published to the jury.  Id. at 233-234, 349-350.  The evidence adduced at trial showed that there was a bloody trail starting near the store counter where the robber had engaged in a shootout with the murder victim.  Where the blood trail began was near where the murder weapon was found.  Id. at 225.  The trail then led to the area near the ice machine where the bandana was found, and then toward the front door where Tyler was laying when police arrived.  Id. at 223-225, 228.  Elodio Mejia, who had been eating in the supermarket/restaurant, observed the two black men when they entered the supermarket.  He testified at trial

that the man carrying the gun was wearing the dark-colored shirt and "had something tied around the bottom of his nose down on his face." He said the object covering the robber's face was the color red. Mr. Mejia testified that the red color of the object on the man's face was "just like" the red in the photograph of the bandana recovered from the scene. Id. 238-239.

James Osterhout, who worked as a paramedic/firefighter for DeSoto County Fire and Rescue Department, was a first responder at the scene of the supermarket. Exh. 22. at 5. Osterhout started patient care on Tyler, who was located inside the doorway. Id. Osterhout recalled immediately placing Tyler on a back board, placing him inside the ambulance to render care, and asking him a series of questions. Id. at 8. He asked Petitioner if he had been robbing the store. Osterhout testified that Petitioner nodded his head affirmatively, looking Osterhout in the eye. Id. at 8. Osterhout noted that he assessed Petitioner's level of alertness as orientated as to person, place and time, and this was reflected on the standard state E.M.T. form. Osterhout, as the lead paramedic, testified that he completed the report on a standard state form indicating that the "patient with multiple gunshot wounds was complaining of pain to his abdomen, states he was robbing the store."[3] Id. at 7. A videotaped deposition of James Osterhout was played to the jury.

---

[3]The testimony came in under the "business record exception" to the hearsay rules.

The murder weapon was also recovered from the scene of the crime.  The murder victim, Enrique Hernandez, used a 9 millimeter pistol in his defense during the robbery.  The perpetrator was carrying a .357 revolver.  The revolver was found on the floor under a shelf near the counter where the robber and victim exchanged gunfire.  A photograph of the revolver was admitted as evidence at trial and published to the jury.  Id. at 299-300.

After the jury trial, the jury returned a guilty verdict for Petitioner as to both counts.  Exh. 38 at 19-20; Response at 3. The court sentenced Petitioner to a term of life in prison for the first degree murder count and a consecutive five-years imprisonment for the robbery with a firearm count.  Exh. 38 at 24-28.

### III. Post-conviction Motions

Petitioner filed a direct appeal with the assistance of counsel on May 27, 1998, arguing that the: (1) trial court erred by not allowing Petitioner to be present in chambers during individual voir dire of *certain prospective* jurors; (2) trial court erred by not allowing Petitioner to be present in chambers during *individual* voir dire; (3) trial court erred by denying Petitioner's objection to the State's peremptory challenge of juror Lewis; (4) trial court erred by denying Petitioner's objection to the State's peremptory challenge of juror Johnwell; (5) trial court erred by overruling Petitioner's objection to the hearsay statements of Maria Hernandez; and (6) that the evidence was legally insufficient to

support the jury verdict finding Petitioner guilty of first degree murder and attempted robbery with a firearm. Exh. 1 (emphasis added). The State filed a brief in response. Exh. 2. Petitioner filed a Reply. Exh. 3. The appellate court heard oral argument on the case. Exh. 4. On December 30, 1998, the appellate court *per curiam* affirmed the decision of the trial court. Exh. 5; <u>Tyler v. State</u>, 729 So. 2d 930 (Fla. 2d DCA 1998).

On March 24, 1999, Petitioner filed a *pro se* petition for writ of habeas corpus in the appellate court raising two grounds of ineffective assistance of appellate counsel when appellate counsel: (1) failed to argue that the trial court erred when it did not "instruct the jury on any elements necessary to sustain the enumerated offense of robbery, while instructing the jury on the elements the State had to prove in order to convict the Petitioner of [f]elony [m]urder while engaged/attempting to engage in [r]obbery"; and (2) failed to raise that the trial court erred when it allowed the "erroneous admission" of evidence consisting of the deposition testimony of Mr. Osterhout when the deposition was taken without Petitioner's presence. Exh. 7. The State filed a Response. Exh. 8. Petitioner filed a Reply. Exh. 9. The appellate court issued an order denying the petition on September 23, 1999. Exh. 10.

On December 23, 1999, Petitioner filed a Rule 3.850 motion with the state court raising seven grounds of relief. Exh. 11.

Five of the grounds were ineffective assistance of counsel claims, one ground alleged trial court error, and the last ground alleged newly discovered evidence. Exh. 11. The newly discovered evidence claim consisted of testimony from two witnesses, William Williams and Michele Blanding, who were purportedly outside the grocery store during the time of the robbery. Id. at 21-22. Thereafter, Petitioner sought leave to amend or supplement the motion, which contained four additional grounds of relief based on the alleged ineffective assistance of counsel. Exh. 12. On June 2, 2000, the trial court summarily denied Petitioner's 3.850 motion. Exh. 13.

Petitioner appealed the trial court's ruling and filed a *pro se* brief with the appellate court on August 24, 2001.[4] Exh. 14. On April 4, 2001, the appellate court filed an opinion affirming the trial court's ruling on two grounds, but reversing and remanding for an evidentiary hearing as to all or part of two other grounds for relief. Exh. 16. The State, who had not appeared in the appellate proceeding, filed a Motion for Rehearing and/or Clarification. Exh. 17. Petitioner filed a Response. Exh. 18. The appellate court granted the State's motion for rehearing and filed a new opinion as a substitute to the withdrawn April 4, 2001 opinion. Exh. 18. In particular, the appellate court found that

---

[4]On February 9, 2001, Petitioner's retained counsel, Mr. Rhoton, filed a notice of appearance on Tyler's behalf and also filed a Motion to Stay Proceedings and For Permission to File an Amended Initial Brief. The appellate court denied both motions. Exh. 15.

Petitioner had presented facially sufficient claims to the trial court regarding whether trial counsel provided ineffective assistance for failing to call witnesses who would have corroborated his theory of the defense, for interfering with Petitioner's right to testify, for waiving Petitioner's presence at the deposition to perpetuate testimony, and for failing to impeach the testimony of E.M.T. Osterhout with the alleged contradicting testimony of E.M.T. Dixon. Id. Mandate issued September 14, 2001. Exh. 20. In light of the remand, the trial court held an evidentiary hearing on January 17, 2002. Exh. 21. Upon conclusion of the hearing, the trial court entered an order denying Petitioner's 3.850 motion. Exh. 23.

Petitioner, with counsel, appealed the trial court's adverse ruling to the appellate court, raising one ground on appeal. Petitioner argued that he was provided ineffective assistance of counsel when trial counsel failed to impeach Osterhout's testimony on cross-examination or by calling Dixon to testify. Exh. 24. The State filed an Answer brief. Exh. 25. Petitioner filed a Reply. Exh. 26. On April 11, 2003, the appellate court *per curiam* affirmed the trial court. Exh. 27. Mandate issued on May 7, 2003. Exh. 28.

Petitioner then filed a Rule 3.850 motion alleging newly discovered evidence. Exh. 29. In particular, Petitioner claimed that there was another person, fellow inmate Chris Wilford, who was formerly unknown to him, who witnessed the robbery. Id.

Petitioner attached Wilfred's affidavit to his motion, which supported his theory of the defense that he was caught in the crossfire between the robber and the victim. Exh. 29. On September 5, 2003, the trial court denied Petitioner's Rule 3.850 motion. Exh. 30. Petitioner appealed the trial court's adversary decision to the appellate court. Exh. 31. The State filed an Answer brief. Exh. 32. On June 2, 2004, the appellate court *per curiam* affirmed the trial court.[5] Exh. 33.

On July 22, 2004, Petitioner again filed a Rule 3.850 motion with the trial court claiming newly discovered evidence. Petitioner claimed that Michele Blanding, who was mentioned in a previous Rule 3.850 motion, now filed an affidavit supporting Petitioner's theory of the defense.[6] Additionally, Petitioner claimed that another newly discovered witness, Chiquita Jackson, stated that her boyfriend, Pluto, admitted to the robbery of which Petitioner is convicted. Exh. 35. The trial court summarily denied the motion. See Doc. #27-2, Supplemental Exh. 39. According to the circuit court docket, Petitioner did not appeal the trial court's decision. Id.

---

[5]On June 23, 2004, Petitioner filed his federal Petition for Writ of Habeas Corpus. Doc. #1. The claims raised after Petitioner filed his Petition were not alleged in the federal Petition *sub judice*.

[6]In Petitioner's first Rule 3.850 motion raising a claim of newly discovered evidence, Michele Blanding told the State Attorney's Office that she was harassed by Petitioner's mother to tell an untrue story. Petitioner dropped his newly discovered evidence claim.

Last, Petitioner filed a *pro se* Petition for Writ of Prohibition or Mandamus with the appellate court requesting that the court remove the Honorable James Parker, the trial court judge, from his future proceedings. Exh. 36; Supplemental Response at 2. The appellate court construed the document as a Petition for Writ of Mandamus and dismissed the action without a written opinion on December 17, 2004. Exh. 40; Supplemental Response at 2.

## IV.  Applicable § 2254 Law

Petitioner filed his timely[7] federal Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001). Neither party disputes the applicability of the AEDPA.

### A.

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254, a federal court

---

[7]The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Respondent concedes that due to Petitioner's collateral appeals, the Petition in this Court was timely filed. Response at 23-25. The Court agrees.

may grant habeas corpus relief <u>only</u> if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Untied States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). <u>See also</u> <u>Grossman v. McDonough</u>, 466 F.3d 1325, 1335 (11th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 2430 (2007). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991); <u>Cabberiza v. Moore</u>, 217 F.3d 1329, 1333 (11th Cir. 2000). Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983).

A state court decision is "contrary to" the Supreme Court's clearly established precedent if the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or the state court confronts a set of facts that is materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000)); <u>Stephens v. Hall</u>, 407 F.3d 1195, 1202 (11th Cir. 2005). A state court

decision does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  Early v. Parker, 537 U.S. 3, 8 (2002); Parker v. Secretary, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but applies it to the facts of the particular inmate's case in an objectively unreasonable manner; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. Brown, 544 U.S. at 1439; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable.  Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003); Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003); Price v. Vincent, 538 U.S. 634, 639 (2003); Woodford v. Visciotti, 537 U.S. 19, 25 (2002).  Depending upon the legal principle at issue, there can be a range of reasonable applications.  Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).  Thus, a federal court's review is generally not *de novo*, but requires a showing that the state court decision is objectively unreasonable.  Id. at 665-66.

If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. Carey v. Musladin, 549 U.S. 70 (2006).

Additionally, AEDPA requires the Court to presume that the state court's factual findings are correct, and the petitioner bears the burden of rebutting the presumption with "clear and convincing evidence." Schriro v. Landrigan, 127 S. Ct. 1933, 1939-40 (2007)(footnote omitted); § 2254(e)(1). See also Miller-El v. Dretke, 125 S. Ct. 2317, 2325 (2005); Henderson, 353 F.3d at 890-91. Where credibility is at issue, relief may only be granted if it was unreasonable for the state court to credit the testimony of the witness. Rice v. Collins, 126 S. Ct. 969, 974 (2006).

The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001). Because an ineffective assistance of counsel claim is a mixed question of law and fact, the presumption does not apply to determination of the ineffective assistance of counsel. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006). A federal court reviews such determinations de novo. Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006), cert. denied 128 S. Ct. 84 (2007).

**B.**

Two of Petitioner's claims raise issues of his trial counsel's effectiveness and one claim raises issues of his appellate counsel's effectiveness under the Strickland v. Washington, 466 U.S. 688 (1984) standard.   In Strickland, the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance.   A petitioner must demonstrate that his or her counsel's performance was deficient, i.e., fell below an objective standard of reasonableness under prevailing professional norms; and that the counsel's deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687-88. "Without proof of both deficient performance and prejudice to the defense, . . . it [can] not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand."  Bell, 535 U.S. at 685 (internal citation omitted) (quoting Strickland, 466 U.S. 668, 687 (1984)).

With regard to the performance component of Strickland, a petitioner must provide factual support for the contentions that counsel's performance was constitutionally deficient.   Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's

-15-

performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 619 (2006). To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689-90. A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000)(quoting <u>Strickland</u>, 466 U.S. at 690). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 125 S. Ct. 2456, 2462 (2005) (citations omitted).

If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Rompilla</u>, 125 S. Ct. at 2467 (citation omitted). To show prejudice, a petitioner must show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." <u>Strickland</u>, 466 U.S. at 693. Instead, a petitioner must show a "reasonable probability that, but for

-16-

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A "reasonable probability" is defined as a probability sufficient to undermine the outcome." Id. Prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  Lockart v. Hill, 506 U.S. 364 (1993).

### V. Federal Petition

**A.   Ineffective Assistance of Counsel for failing to call E.M.T. David Dixon to testify to impeach the testimony of E.M.T. James Osterhout**

In summary, Petitioner argues that the E.M.T. James Osterhout's testimony was the "most damaging" testimony and his defense counsel did not try to impeach his testimony with the testimony of E.M.T. David Dixon.  Petition at 5-6.  Petitioner asserts that during his 3.850 evidentiary hearing, Dixon testified that he assisted Osterhout load Petitioner into the ambulance. Id. at 6.   Petitioner further claims that Dixon testified that Petitioner was "thrashing about, spitting, and vomited a couple of times. . . ." Id. at 7.   Thus, Petitioner argues that Dixon's testimony could have weakened Osterhout's testimony that Petitioner admitted to him to robbing the grocery store.  Id. at 11. Petitioner cites to Smith v. Wainwright, 741 F.2d 1248 (11th Cir. 1984) and argues that the failure to impeach this adverse witness' testimony amounted to ineffective assistance.  Id. at 7. Petitioner argues that impeaching Osterhout's testimony would have

supported the theory of defense that Petitioner was not robbing the store, but was caught in the cross-fire between the robber and victim.  Id. at 11.

In Response, Respondent argues that the trial court's decision to deny Petitioner relief on this ground after conducting an evidentiary hearing was objectively reasonable.  Response at 29. Respondent notes that during the evidentiary hearing, defense counsel testified that he chose not to cross-examine Osterhout about the alleged inconsistency with E.M.T. Dixon's testimony as a matter of trial strategy.  Id.  Respondent notes that the only inconsistency between Osterhout and Dixon's testimony concerns *when and where* Petitioner told Osterhout that he had been robbing the store, *not* whether the statement had been made.  Id. at 30. Further, Dixon signed off on the report on which Osterhout noted Petitioner's statement that he was robbing the store, thereby providing further credibility to Osterhout's report.  Id.

Petitioner raised this ineffective assistance of counsel claim in his amended Rule 3.850 motion.[8]  Exh. 12 at 6-10.  The trial in denying Petitioner relief on this ground summarized that "[t]he essence of [Tyler's] claim is that counsel did not 'confront' James

---

[8]Part of Petitioner's argument concerning this ground is found in his Rule 3.850 motion under ground nine, Exh. 12 at 6; however, Petitioner titled ground ten in the 3.850 motion "ineffective assistance of counsel for failure to use Mr. David Dixon, Ms. Sally Platt, and Mr. Clayton Boggess as defense witness [sic]."  Exh. 12 at 10.

Osterhout with the alleged testimony of other paramedics (Dixon, Platt and Boggess) . . . at the time of Osterhout's deposition." Exh. 13.  Specifically, the trial court found, in relevant part:

> Defense counsel would not have been able to impeach Osterhout with the statements of other witnesses.  In any event, however, the testimony of these other witnesses, as represented by the [Petitioner] in his Motion, is not inconsistent with Osterhout's testimony.   Dixon's testimony does not specify when he was in the rear of the ambulance and whether he was in the rear of the ambulance during the time the [Petitioner] was transported. Moreover, merely because the [Petitioner] may have made no statement in Dixon's presence, this does not negate Osterhout's testimony as to the [Petitioner's] admission. Finally, although [Petitioner] would like Dixon's testimony to constitute the 'real version' of the events, Dixon could offer no testimony that contradicted Osterhout or confirmed the [Petitioner's] version of the events.

Exh. 13.  Petitioner appealed the trial court's denial to the appellate court.  Exh. 16.  The appellate court reversed for the trial court to hold an evidentiary hearing including this claim of ineffective assistance of counsel.  In particular, the appellate court stated:

> The decision not to cross-examine a witness regarding certain areas may be strategic.  Therefore, in this case, had Tyler's counsel called Dixon as a witness to impeach Osterhout, Tyler might not have been prejudiced by his counsel's failure to ask Osterhout about the alleged inconsistences with Dixon's account of the events.  Since that did not occur, we cannot say Tyler was not prejudiced by his counsel's failure to fully cross-examine Osterhout.   Therefore, we reverse the trial court's denial of this claim and remand for an evidentiary hearing as the record attachments do not conclusively refute Tyler's claim . . . .  It is clear that where the record does not indicate otherwise, trial counsel's failure to impeach a key witness with inconsistencies constitutes ineffective assistance of counsel and warrants relief.  Richardson v. State, 617

-19-

So. 2d 801, 803 (Fla. 2d DCA 1993); <u>Kegler v. State</u>, 712
So. 2d 1167, 1178 (Fla. 2d DCA 1998).   As stated,
previously, Osterhout was a key witness for the State.
The accounts of the witnesses to the shooting were
inconsistent according to Taylor and arguably did not
establish a credible identification of the shooter.
Therefore, Osterhout's testimony regarding Tyler's
alleged confession was central to the State's case and
the impeachment of his testimony was essential to Tyler's
defense.   Testimony that Tyler was vomiting and
incoherent in the back of the ambulance, where the
confession allegedly took place, would have been
important to Taylor's case.  Thus trial counsel's failure
to impeach Osterhout's testimony on cross-examination or
by calling Dixon to testify was not reasonable and it
prejudiced Tyler's defense.   We therefore reverse and
remand for an evidentiary hearing since the record
provided does not conclusively refute this claim.

Exh. 16 at 9-10.

The trial court held an evidentiary hearing, pursuant to the

appellate court's order, in which defense counsel and E.M.T. David

Dixon testified.   Exh. 21.   After the hearing, the trial court

denied Petitioner relief on this ground, noting:

[T]rial counsel strategically chose not to cross-examine
Osterhout about the alleged inconsistencies with E.M.T.
Dixon's account.     Trial counsel testified that
Osterhout's rendition of the facts were that *he was alone*
with the Petitioner when he made the admission against
interest and he did not want to make the statement a
focal point of the facts in this case.

The factual rendition of the case as presented by
Petitioner is not what the trial record shows.   The
factual rendition contained in the Opinion rendered by
the Appell[ate] Court is incorrect.

Two African American males entered a small Hispanic
grocery store in Nocatee Florida, a small community south
of Arcadia.   All the witnesses were essentially in
agreement on this point.   No one saw a lone African
American enter the store during the whole robbery.

During the robbery one witness [,] Elodio Mefia, ran from the store out of the door the Petitioner would have had to have entered.   At no time where there any other African American males present except the two robbers.

Janet Hernandez, the victim's daughter, and Maria Hernandez, the victim's wife, were present in the store. The Petitioner, the one with the gun, grabbed Janet Hernandez by the hair and dragged her to the front counter where he[r] dad was.  Maria Hernandez begged the Petitioner to calm down, that she would give him the money at which time the Petitioner pointed the gun to her head.

Mr. Hernandez produced a gun and shot the Petitioner five times and the Petitioner fired back at him causing his death.   Both Janet Hernandez and Maria Hernandez testified that the person lying [o]n the floor was the person with the gun that shot Mr. Hernandez.

While there may have been some conflict as to what the Petitioner was wearing, there was no doubt from the testimony that the Petitioner was the person brandishing the gun and who was shot down by Mr. Hernandez, in front of the witnesses.   The Petitioner had, by his own testimony at the hearing, suffered eight entrance and seven exit gunshot wounds.  He was hardly some innocent bystander who picked up a stray round. . . . .

Thus the strategic decision not to highlight Petitioner's statement to E.M.T Osterhout is quite understandable and would not have changed the jury verdict of this case in light of the overwhelming evidence against the Petitioner from the witnesses; and the fact he never left the store because of the multiple gunshot wounds he received during the robbery.

Exh. 23 (emphasis added).  Petitioner, with counsel, appealed the

trial court's denial of this claim that defense counsel rendered

ineffective assistance by not attempting to impeach Osterhout with

Dixon's testimony.  Exh. 24, Exh. 26.  The appellate court *per*

*curiam* affirmed the trial court's decision.  Exh. 27.

The Court finds the trial court's decision with regard to ground one is not contrary to or an unreasonable application of federal law, nor is it an unreasonable determination of facts in light of the evidence presented in the State court.  The State court correctly applied the <u>Strickland</u> standard to Petitioner's ineffective assistance of counsel claim and found counsel's decisions did not prejudice Petitioner in light of the "overwhelming" evidence presented to the jury.  As set forth above, the record, including Petitioner's post-conviction motions and the transcript of the evidentiary hearing held before the trial court, supports the trial court's decision.  Further, the trial court determined that defense counsel's decision not to attempt to impeach E.M.T. Osterhout's testimony with E.M.T.'s Dixon's testimony because Osterhout testified that he was *alone* with the Petitioner when he made the admission.  Exh. 23 (emphasis added).  Counsel testified that he did not want to make the statement a focal point of the facts in this case.  In other words, Dixon's testimony could have corroborated Osterhout's testimony as Dixon's testimony concerns when and where Petitioner told Osterhout that he had been robbing the store, *not* whether the statement had been made.  Dixon also signed off on Osterhout's E.M.T. report.  Although Petitioner argues in his Reply that defense counsel's explanation "is rather absurd, considering the fact the State made Petitioner's alleged confession of Mr. Osterhout's [sic] the

highlight and focal point of its case in chief," reply at 3, the trial court agreed with defense counsel that his decision was a matter of strategy and was a reasonable decision. <u>See</u> <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (stating that the court does not second-guess counsel's strategy). Petitioner does not establish that the state court applied <u>Strickland</u> incorrectly, or that the state court "applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Bell</u>, 535 U.S. 699. Based on the foregoing, the Court denies Petitioner relief as to ground one.

**B.   Ineffective assistance of trial counsel for waiving Petitioner's right to be present at the videotaped deposition of Osterhout**

Petitioner argues that defense counsel provided ineffective assistance when he waived Petitioner's right to be present at the videotaped deposition testimony of Mr. Osterhout. Petition at 22. Petitioner argues that counsel "violated [his] fundamental constitutional right to be personally present during the videotaped deposition testimony . . . and his Sixth Amendment right to confront State's witness . . . and violated the Florida Rules of Criminal Procedure." <u>Id.</u> Petitioner asserts that the record in this case does not support the finding that Petitioner "personally, knowing, intelligent or voluntary waived his presence to attend the videotaped deposition testimony of State's witness . . . . ." <u>Id.</u> at 23. The instant claim is related to the ineffective assistance

of counsel claim discussed above, in ground one, as Petitioner argues that had he been present at the deposition, he would have asked counsel to impeach Osterhout with Dixon's testimony.  Id. at 24.

In Response, Respondent argues that this ground is now procedurally barred because Petitioner did not raise this ground on appeal after the trial court held an evidentiary hearing and denied relief as to this ground.  Response at 34.  In Reply, Petitioner asserts that he will "rely upon the grounds raised" in the Petition.  Reply at 7.

A petitioner, even when asserting grounds that warrant review by a federal court under § 2254, must have first raised such grounds before the state courts, thereby giving the state courts the initial opportunity to address the federal issues.  A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ."  28 U.S.C. § 2254(b)(1)(A).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Duncan v. Henry, 513 U.S. 364, 365-66 (1995).  "A state prisoner seeking federal habeas relief cannot

raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). See also Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003), cert. denied sub nom. Pruitt v. Hooks, 543 U.S. 838 (2004). To properly exhaust a claim, a petitioner must present the same claim to the state court that he urges the federal court to consider. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (citations omitted); Kelley v. Sec. Dept. of Corrections, 377 F.3d 1317, 1343-44 (11th Cir. 2004).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief. . . . ." Smith, 256 F.3d at 1138.

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). "Cause" ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (quoting Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999)). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." Henderson, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

Upon review of the record, the Court agrees with the Respondent and finds that Petitioner did not exhaust his state proceedings with respect to this claim. Petitioner raised this claim in his amended 3.850 motion. Exh. 12 at 4. The trial court, citing Wilson v. State, 479 So. 2d 273 (Fla. 2d DCA 1985), noted

"that the use of a deposition, taken in the involuntary absence of the defendant, as evidence against him violates the defendant's right to be personally present during trial as well as his Sixth Amendment right to confront witnesses." Exh. 13. The trial court, however, denied Petitioner relief on this ground, finding that Petitioner's claim lacked the "involuntary" nature. Id.

Petitioner appealed the trial court's decision and the appellate court reversed in order for the trial court to hold an evidentiary hearing. Exh. 19 at 8-9. The appellate court stated: "Tyler asserted that he informed his attorney that he wanted to be present for all proceeding and he in no way agreed to waive his presence at the deposition of Osterhout. Therefore, in absence of information to the contrary, his attorney's waiver of his presence was not reasonable under the circumstances." Id. at 8.

On remand, the trial court held an evidentiary hearing. Exh. 24. Defense counsel testified during the hearing that "Petitioner waived his appearance and chose not to attend." Id. The trial court went on to find "trial counsel's testimony to be the most credible." Id. Petitioner did *not* appeal the trial court's denial of this claim. To properly exhaust the issue, Petitioner was required to raise this issue in the appeal of the trial court's denial of the Rule 3.850 decision. See Martin v. Sec. Dept. of Corrections, No. 6:05-cv-1815, 2008 WL 2490447 *10 (M.D. Fla. June 19, 2008)(citing Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir.

1979)[9] (finding that exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of its denial)); <u>Cortes v. Gladish</u>, 216 Fed. Appx. 897 (11th Cir. 2007).  Since petitioner has not established cause and prejudice or a fundamental miscarriage of justice as to this issue, Ground Two is procedurally defaulted.

Even if the Court were to rule on the merits of this claim, AEDPA requires the Court to presume that the state court's factual findings are correct, and the petitioner bears the burden of rebutting the presumption with "clear and convincing evidence." <u>Schriro v. Landrigan</u>, 127 S. Ct. 1933, 1940 (2007)(footnote omitted); § 2254(e)(1).  <u>See also</u> <u>Miller-El v. Dretke</u>, 125 S. Ct. 2317, 2325 (2005); <u>Henderson</u>, 353 F.3d at 890-91.  Where credibility is at issue, relief may only be granted if it was unreasonable for the state court to credit the testimony of the witness.  <u>Rice v. Collins</u>, 126 S. Ct. 969, 974 (2006).  Here, the 3.850 court determined that defense counsel's testimony was "most credible" as counsel testified that Petitioner waived his presence at Osterhout's deposition.  Petitioner has not overcome the trial court's finding of fact with clear and convincing evidence and as such Petitioner is denied relief on this ground.

**C.  Ineffective assistance of appellate counsel on direct appeal for failing to argue that the trial court erred in admitting**

---

[9]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**the videotaped testimony of Osterhout, the State's witness, when Petitioner was not present at the deposition**

The ground *sub judice* is related to the previous two grounds. Petition at 17-20.  Petitioner argues that appellate counsel provided ineffective assistance when he did not raise an issue of trial court error on direct appeal when the record before the appellate counsel did not show that Petitioner "personally [,] knowing [sic] and willingly waived his presence to attend the videotaped deposition testimony of State's witness, James Osterhout, and the only evidence that Petitioner affirmatively waived . . . his presence was the testimony of his trial counsel as a preliminary matter during the deposition . . . and there was no evidence that Petitioner received notice of videotaped testimony or was informed of right to attend." <u>Id.</u> at 17-18.  Petitioner argues that appellate counsel "could and should have raised the issue on direct appeal."[10]  <u>Id.</u> at 18.

In Response, Respondent, referring to Exh. 22 at 3, notes that appellate counsel could not have raised this issue on appeal because Petitioner, through counsel, waived his presence at the deposition.  Response at 33.  Specifically, Respondent refers to the first page of the transcribed deposition testimony where defense counsel stated that Petitioner received notice and had no

---

[10]Petitioner raised this claim of ineffective assistance of appellate counsel in his state petition for habeas corpus. Exh. 7 at 7-9.  The appellate court denied the petition.  Exh. 8.

objection to proceeding without Petitioner's present.  Exh. 22 at 3.  Thus, Respondent argues that "this issue was not preserved for appellate review and appellate counsel cannot be considered ineffective for failing to raise it."  Response at 33-34.  In Reply, Petitioner contributes no additional argument with respect to this claim and directs the Court to his Petition.  Reply at 7.

Upon review of the record, Petitioner raised this claim of ineffective assistance of appellate counsel in his state petition for writ of habeas corpus, which he filed with the appellate court.[11]  Exh. 7.  The appellate court issued an order denying the petition.  Exh. 10.  Thus, it appears Petitioner exhausted this claim and Respondent does not argue that this claim is unexhausted or procedurally defaulted.

The Eleventh Circuit has rejected the argument "that a state court must explain its rationale in order for a claim to have been 'adjudicated on the merits,' holding that a claim is entitled to deference under 2254(d) provided that the issue was raised and the court rendered a decision that was not contrary to or an unreasonable application of federal law."  Hargrove v. Solomon, 227 Fed. Appx. 806, 808 (11th Cir. 2007)(citing Wright v. Sec. Dept. of Corrections, 278 F.3d 1245, 1254-55 (11th Cir. 2002)).  The standard for evaluating whether appellate counsel provided

---

[11]Although similar to the ground *sub judice*, Petitioner raised a *different* claim in his Rule 3.850 motion concerning *trial counsel's ineffectiveness* for waiving his presence at the pretrial conferences and depositions.  Exh. 16 (ground 3).

ineffective assistance is essentially the same as the <u>Strickland</u> standard used to evaluate whether trial counsel rendered ineffective assistance.  <u>See</u> <u>Shere v. Sec. Dept. of Corrections</u>, ____ F.3d ____, 2008 WL 3066738 (11th Cir. 2008)(citations omitted).  The test for establishing appellate counsel's ineffectiveness is: (1) deficient performance; and (2) but for appellate counsel's deficient performance, petitioner would have prevailed on appeal.  <u>Id.</u> at *5.

Here, the Court agrees with the Respondent.  Petitioner does not establish that no competent appellate counsel would have taken the action the appellate counsel took in this case, which was not raising a matter of trial court error on direct review concerning Petitioner's lack of presence at the deposition of E.M.T. Osterhout.  The Eleventh Circuit has held that an attorney is not ineffective for failing to raise or preserve a meritless issue. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992).  This issue lacks merit as the record before the appellate counsel evidenced that Petitioner *waived* his presence at the deposition.  Defense counsel cross-examined Osterhout during the deposition.  Exh. 22 at 14-20. Based on the record before the appellate counsel, counsel acted reasonably.  Further, Petitioner can not show that, but for appellate counsel's failure to raise this ground, he would have prevailed on appeal.  As such, the Court denies Petitioner relief with regard this ground.

**D.     Prosecutorial misconduct based on the prosecutor's statements during closing argument regarding Petitioner's failure to testify**

Petitioner states that he did not take the stand as a witness in this case as he invoked his Fifth Amendment rights.  Petition at 13.  Petitioner argues, however, that his right to fair and impartial jury trial was violated when the prosecutor during his closing argument improperly commented on the fact that Petitioner did not take the stand to testify.  Id. at 14.  Because of the prosecutor's statements, Petitioner argues that the State eliminated his "theory of the defense that he was an innocent bystander who had just entered the store during the shooting and was caught in a crossfire. . . . ."  Id. at 15.

In Response, Respondent argues that "[t]he prosecutor did not improperly comment upon Petitioner's right to remain silent; rather, he properly commented upon the evidence presented at trial."  Response at 32.  Respondent further states that Petitioner "is confusing proper comment upon the defense presented with an improper comment upon the defendant's choice not to take the witness stand and testify in his own behalf."  Id.

In Reply, Petitioner refers the Court to the State's closing argument and argues that the prosecutor's statement was clearly intended to be a comment on his failure to testify.  Reply at 5-6.  Petitioner also asserts that "the prosecutor was not merely expressing a reasonable conclusion that could be drawn from the

testimony of the victims . . . but merely [sic] expressing a direct

adverse comment on Petitioner's silence at trial."   Id. at 6-7.

Petitioner did not raise his claim of prosecutorial misconduct

on direct appeal.  Exh. 1.  Petitioner raised a similar argument in

ground four of his first 3.850 motion, arguing that trial counsel

rendered ineffective assistance when counsel allegedly failed to

object to the prosecutor's improper statements during closing

argument.[12]  Exh. 13.  A criminal defendant in Florida, however, is

required to raise claims of prosecutorial misconduct in closing on

---

[12]The trial court denied Petitioner relief on his ineffective
assistance of counsel claim for failing to object to the
prosecutor's statement.  The trial court, in pertinent part,
addressed the prosecutor's statement during his closing argument:

> The excerpts complained of by the [Petitioner] in his
> Motion do not run afoul of the standards set forth above.
> The prosecutor was allowed to point out inconsistences in
> the defense witness' testimony, i.e., what he did or did
> not say.  As to the identification of the [Petitioner] by
> the victim's wife and daughter, the prosecutor was merely
> recapping their testimony.  Finally, the mention of doing
> justice and the victim's name in the last part of the
> prosecutor's closing is insufficient to constitute
> improper argument.

Exh. 13.  Although Petitioner filed an appeal, Petitioner did not
raise this claim on appeal. The appellate court does not address
this claim and further notes that "Tyler asserted additional
grounds in his initial motion for postconviction relief.  We do not
address those grounds in this opinion as he affirmatively abandoned
them on appeal."  See generally Exh. 16, Id. at 2, n.1.   As
discussed above, to properly exhaust the issue, Petitioner was
required to raise this issue of ineffective assistance of counsel
in the appeal of the trial court's denial of the Rule 3.850
decision.  See Martin, No. 6:05-cv-1815, 2008 WL 2490447 *10 (M.D.
Fla. June 19, 2008)(citing Leonard, 601 F.2d at 808 (5th Cir. 1979)
(finding that exhaustion requires not only the filing of a Rule
3.850 motion, but also an appeal of its denial)); Cortes, 216 Fed.
Appx. 897 (11th Cir. 2007).

direct appeal, but claims that trial counsel was ineffective for failing to object to these remarks is properly raised in a postconviction motion. <u>Bell v. State</u>, 965 So. 2d 48, 60 (Fla. 2007); <u>Hurley v. State</u>, 962 So. 2d 1046, 1047 (Fla. 5th DCA, 2007)(finding trial court error where the court found defendant's ineffective assistance of counsel for failing to object to prosecutorial misconduct in closing procedurally barred due to defendant's failure to raise claim on direct appeal). Thus, Petitioner did not exhaust his remedies and since the state remedies are no longer available to him, this claim is deemed procedurally defaulted. Petitioner has not shown an exception to the procedural default, such as, cause and prejudice or a fundamental miscarriage of justice.

Assuming *arguendo* that this claim is not procedurally defaulted, or that Petitioner could establish an exception to the default, the Court reviews the merits of this ground. During closing argument, the prosecutor stated:

> The doctor testified that a couple of the shots could be through-and-through shots. There's your bullets. Where the other one came from, we don't know. What they are, we don't know.
>
> The only way that the ski mask got out of the store, folks, is because it went out it walked out on two feet, it left.
>
> I don't remember much stuff about tennis shoes. All I know is that Maria and Janet both said he was the man with the gun. He was the man who shot the father. "The man on the floor was the one with the gun that tried to rob us." Why would a person who's innocent walk into a store, who gets shot accidently, want to be crawling out

> of the store?  Why would he lay there and say, "Don't
> shoot me, Mr. Hernandez.  Don't shoot me."
>
> You know, "I was just in here.  They went that way," you
> know.  Why wouldn't that have happened?  Well, we don't
> have any testimony of that.  We don't have anything like
> that.

Exh. 38 at 603-604.  At this point, defense counsel objected and he
and the prosecutor approached the bench.  Id. at 604; Response at
31.  The trial court denied the defense counsel's objection and
found that the prosecutor's statements addressed the witness'
statement, not Tyler's decision to not take the witness stand.  Id.

Upon review of the prosecutor's closing argument, the Court
agrees with the Respondent.  The trial court's decision was not
contrary to or an unreasonable application of federal law, nor was
the decision an unreasonable determination of facts in light of the
evidence.  The Fifth Amendment does prohibit a prosecutor from
commenting directly or indirectly on a defendant's failure to
testify.  A prosecutor's statement violates the defendant's right
to remain silent if either: (1) the statement was manifestly
intended to be a comment on the defendant's failure to testify; or
(2) the statement was of such a character that a jury would
naturally and necessarily take it to be a comment on the failure of
the accused to testify.  The question is not whether the jury
possibly or even probably would view the remark in this matter, but
whether the jury necessarily would have done so.  United States v.
Blakenship, 382 F.3d 1110, 1128 (11th Cir. 2004)(citing United
States v. Knowles, 55 F.3d 1146, 1162-1163 (11th Cir. 1995)).  "The

defendant has the burden of establishing that one of the two criteria exists." U.S. v. Reyes, Case No. 07-13456, 2008 WL 2669126 *3 (11th Cir. July 9, 2008)(citing United States v. Knowles, 66 F.3d 1146, 1163 (11th Cir. 1995)). The Court will not find that a prosecutor manifestly intended to comment on a defendant's failure to testify if some other explanation for the prosecutor's remarks is equally plausible." Id. (citing United States v. Chirinos, 112 F.3d 1089, 1099 (11th Cir. 1995)). If a neutral explanation for the prosecutor's remarks exists, then there was no manifest intent. Id.

As in the case *sub judice*, the record evidences that the prosecutor did not manifestly intend to comment on Petitioner's decision to not testify pursuant to the Fifth Amendment. Clearly a neutral explanation exists as the prosecutor was expressing a conclusion that could be drawn from the testimony of the victims provided during the trial, "namely that *at the time of the shoot-out*, an innocent bystander caught in the cross-fire would have said or done something to prevent being shot at." Response at 32-33 (emphasis added). Upon review of the prosecutor's closing argument, it is clear that the context of the prosecutor's statements involved what the witness' testified that Tyler said *at the scene* of the shoot-out. The prosecutor made no comment, or even a remote suggestion, about Tyler's decision to not take the

witness stand in the case.  As such, Petitioner is denied relief on this ground.

**E.   Trial court erred in relying on unsworn narrative of Detective Mays to determine that Petitioner's supporting affidavit, which was submitted by fellow inmate Chris Wilford, to his Rule 3.850 motion raising a claim of newly discovered evidence, was probably unreliable**

Petitioner asserts that the trial court erred in denying him relief on his claim of newly discovered evidence raised in his Rule 3.850 motion.  Petition at 26.  Specifically, Petitioner argues that the trial court erroneously relied on an affidavit of Detective Curt Mays "to make a credibility determination to refute" the newly discovered evidence consisting of an affidavit from fellow inmate, Chris Wilford.  Id. at 27.  Petitioner argues that the detective's affidavit was not signed and was not under oath. Id.  The newly discovered evidence contained in Wilford's affidavit substantiated Petitioner's theory of the defense that he was an innocent bystander caught in the cross fire between the robber and the victim.  Id.  Based on the foregoing, Petitioner argues he is entitled to an evidentiary hearing in order for the Court to determine "the truthfulness and credibility of Chris Wilford."  Id.

In Response, Respondent argues that this matter is not cognizable in a federal habeas proceeding because this issue concerns only state law.  Response at 36.  Respondent argues a state's interpretation of its own laws does not raise a federal constitutional issue.  Respondent also argues that to the extent

Petitioner is challenging the trial court's decision to reject his newly discovered evidence claim, such a claim is not cognizable in a federal proceeding as the test under Florida law is whether the evidence is of such nature that it would probably produce an acquittal on retrial. Id. at 37 (citing Jones v. State, 591 So2d 911, 915 (Fla. 1991)).  In Reply, Petitioner refers the Court to his Petition.  Reply at 7.

Upon review of the record, Petitioner raised his newly discovered evidence claim in his Rule 3.850 motion, filed May 5, 2003.  Exh. 29.  Petitioner argued that Chris Wilford, formerly unknown to him, "was present at the time of the murder/robbery." Id. at 2.  The trial court entered an order summarily denying Petitioner's 3.850 motion.  Exh. 30.  Petitioner, with counsel, filed an appeal of the trial court's decision, Exhs. 31, 32, but the appellate court *per curiam* affirmed the trial court's decision. Exh. 33.  Thus, it appears Petitioner exhausted this issue.

Here, Petitioner challenges the trial court's factual decision regarding his claim of newly discovered evidence.  The newly discovered evidence, an affidavit from inmate Chris Wilford, supports his theory of defense.  As Respondent argues, "newly discovered evidence" is a matter determined by state law, and a federal writ of habeas corpus is not intended to enforce state-created rights.  Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000).  The trial court reviewed Petitioner's newly discovered evidence and found inmate Wilford's affidavit unreliable and

-38-

Petitioner's motion incredulous.   In pertinent part, the Court held:

> This newly discovered evidence was discovered by the Petitioner shortly after the Second District Court of Appeal affirmed this Court's denial of Petitioner's Request for Post Conviction Relief 3.850.   The Second District's Opinion was rendered on April 11, 2003 and Petitioner's new eyewitness acknowledged his affidavit on May 5, 2003.

> Interestingly enough, the affiant, Chris Wilford, is a fellow inmate with Mr. Tyler at Sumter Correctional Institution serving thirty-two (32) years for robbery with a Firearm or Dangerous Weapon out of Hillsborough County.

> For Appellate review purposes, Mr. Tyler brought forth two other 'eyewitnesses' at the Post Conviction Relief hearing January 17, 2002.  A Mr. William Williams, under oath and by affidavit, testified he and Michele Blanding were actually across the street from the store; saw Mr. Tyler walk into the store; heard gunshots; then two men ran out and Mr. Tyler never came out. (citations omitted).

> Michele Blanding, who was under subpoena, called the State Attorney's Office and refused to come to the hearing stating that Ernestine Tyler, Petitioner's mother, had been harassing her to come to Court to say something that's not true.  (citations omitted).

> This information was relayed to Mr. Tyler together with the fact the Court was going to continue the hearing until Ms. Blanding could be brought before the Court. The Petitioner then opted to abandon the allegation concerning these two supposed eyewitnesses to the crime.

> An analysis of Chris Wilford's affidavit and statement obtained by Det. Curt Mays inevitably leads this Court to the conclusion that Mr. Tyler is again trying to commit a fraud upon the Court and justice system.  There is no way Chris Wilford's factual rendition can be reconciled with the physical evidence at the scene, much less with the testimony of the eyewitnesses in and out of the store.

It is also very telling that it is only these belated eyewitnesses that advance the factual rendition that Mr. Tyler innocently walked into a robbery and gun fight which was in progress inside the store. More importantly, Mr. Tyler chose not to take the stand to advance this information to the jury. . .

For Appellate review, it should be noted that the Super-T Market operated by the victim, Mr. Hernandez, primarily catered to the Hispanic community. The store is no Wal-Mart or Albertsons. The distances described in the record are a matter of feet and not yards. Mr. Tyler was able to crawl only 15 to 20 feet after he was shot numerous times by the victim. Parenthetically, virtually all the eyewitnesses described the person who Mr. Hernandez shot and who shot at Mr. Hernandez as wearing a purple shirt, the shirt that was removed from Mr. Tyler. Also, Sergio Jonta Martinez, a witness, who was actually outside the grocery store, just arriving at the store, heard gunshots and saw a black male exit the main entrance of the store. After the subject fled, Mr. Jorta went into the store and observed an injured black male laying beside the door wearing a purple shirt, Mr. Tyler. Not one shred of evidence or testimony of any witness that places a black male, Mr. Wilfred, parked in a car at the store.

Coincidentally, the subject Chris Wilfred identified as Pluto in his affidavit, was actually a person named Lawrence Avinger who was killed in an auto accident in 1996.

In conclusion, upon review of the eyewitnesses' statements and testimony at trial and in light of the overwhelming physical evidence establishing Mr. Tyler's guilt way beyond all reasonable doubt, Mr. Wilford's statement and affidavit can only termed another belated attempt by Mr. Tyler to commit fraud upon the Court. Even if Mr. Wilford was to have testified at trial, his testimony, due to his extensive felony record and due to his factual rendition, which no way comports to the record in this case, would have been disregarded by the jury. The outcome would have remained the same.

Exh. 30.

The trial court, in summary, made a factual determination regarding Petitioner's allegations and further found that in light

of the overwhelming evidence supporting Petitioner's guilt, the jury verdict would have remained the same.   To the extent Petitioner raises an issue with the trial court's factual finding, AEDPA requires the Court to presume that the state court's factual findings are correct.   Here, the Court finds that the trial court's decision was not based on a decision contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.   The trial court's decision is supported by the record.   To the extent Petitioner attempts to claim that he is actually innocent, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have this otherwise barred constitutional claim considered on the merits."   Herrera v. Collins, 506 U.S. 390, 404 (1993).   To make a showing of actual innocence, a petitioner must present new evidence, which would establish that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt.   House v. Bell, 547 U.S. 518 (2006); Schlup v. Delo, 513 U.S. 298, 327 (1995); Sibley v. Culliver, 377 F.3d 1196, 1205 (11th Cir. 2004).   A petitioner must produce *reliable* evidence that was not presented at trial.   Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001)(emphasis added).

The Court agrees with the trial court and finds Petitioner's newly discovered evidence in the form of an affidavit from fellow inmate Wilford questionable at best.   The trial court did not merely rely on Detective May's report to find Wilford's affidavit

and Petitioner's newly discovered evidence claim suspect; the trial court reviewed the entire record.  The crime occurred in 1995 and Petitioner's trial was held in 1997.  Then, coincidentally, a matter of weeks after the appellate court affirmed the trial court's denial of Petitioner's 3.850 motion, Petitioner comes forward with Wilford's affidavit dated May 5, 2003.  The trial court found that the factual rendition in Wilford's affidavit irreconcilable with the facts on record from the eyewitnesses' statements, testimony at trial, and physical evidence. Although Petitioner requests the Court hold an evidentiary hearing to determine Wilford's credibility, in a federal habeas proceeding, a petitioner is restricted in his ability to use an evidentiary hearing to develop facts to support his claim.  A federal evidentiary hearing is not required unless a petitioner demonstrates that he would be entitled to habeas relief on his claims if his factual allegations are proven.  Breedlove v. Moore, 279 F.3d 952, 960 (11th Cir. 2002).  The Court has carefully reviewed the record herein and concludes that Petitioner is not entitled to an evidentiary hearing on this claim.  The trial court found that Petitioner was attempting to commit fraud on the court with his newly discovered evidence claims and this decision was reasonable.  See Herrera, 506 U.S. at 423 (O'Connor, J., concurring)(opining that "11th hour" exculpatory affidavits "with no reasonable explanation for the nearly decade-long delay" are "suspect."). Petitioner is denied relief on this ground.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The Attorney General for the State of Florida is **DISMISSED**.

2.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**.

3.    The Clerk of Court shall: (1) terminate any pending motions; (2) enter judgment accordingly; and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __12th__ day of September, 2008.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record

-43-